Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Raymond Barone*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Barone,<br><br>             Plaintiff,<br><br>     v.<br><br>The Hartford Life and Accident Insurance Company, Wal-Mart Stores, Inc., Group Long Term Disability Plan for Employees of Wal-Mart Stores, Inc.,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Raymond Barone (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

### *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Wal-Mart Stores, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group long term disability insurance policy which was fully insured and administered by The Hartford Life and Accident Insurance Company (hereinafter referred to as "Hartford"). The specific Hartford policy is known as group policy GLT024554. The Company's purpose in subscribing to the Hartford policy was to provide disability insurance for its employees. Upon information and belief, the Hartford policy may have been included in and part of the Group Long Term Disability Plan for Employees of Wal-Mart Stores, Inc. (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Hartford. Plaintiff believes that as it relates to his claim, Hartford functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5. Upon information and belief, Plaintiff believes Hartford operated under a conflict of interest in evaluating his claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Hartford's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

6. The Company, Plan and Hartford conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about February 10, 2008 due to serious medical conditions and was unable to work in his designated occupation as a Pharmacist. Although Plaintiff remains disabled as that term is defined in the relevant policy due to his serious medical condition, he was forced to return to work in August 2010 due to serious financial strain. As a result of Hartford's termination of his disability benefits Plaintiff has lost his home, several vehicles and has been forced to move in with relatives which has caused him severe humiliation.

10. Following his disability, Plaintiff applied for long term disability benefits under the relevant Hartford policy. The relevant long term disability policy provides the following definition of disability:

> Total Disability or Totally Disabled means You are prevented from performing the Essential Duties of:
> - Your occupation or a Reasonable Alternative Job offered to You by the Employer during the Elimination Period and the 12 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 20% of Your Pre-Disability Earnings; and,

- after that, Any Occupation.

Your Disability must result from:

- accidental bodily injury;
- sickness;
- Mental Illness;
- Substance Abuse; or
- pregnancy.

11. In support of his claim for long term disability benefits, Plaintiff submitted to Hartford medical records from his treating physicians supporting his disability as defined by the relevant Hartford policy.

12. Hartford notified Plaintiff in a letter dated October 10, 2008 that it was approving his claim for long term disability benefits based on his disabling medical condition(s).

13. In a letter dated May 5, 2009 Hartford informed Plaintiff it was terminating benefits beyond May 9, 2009 due to the fact that it no longer found he met the definition of Total Disability in the relevant policy.

14. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the May 5, 2009 termination of his long term disability benefits and submitted additional medical evidence to Hartford.

15. In support of his appeal, Plaintiff submitted to Hartford a narrative letter authored by his now twelve (12) year treating board certified internist who opined, "…I do consider [Plaintiff] disabled and unable to work…I cannot stress enough how disabling [Plaintiff's] condition is."

16. During the administrative review of Plaintiff's claim, he applied for and received social security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

17. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of May 10, 2008. Plaintiff submitted to Prudential a copy of his February 27, 2009 Notice of Award from the Social Security Administration.

18. The SSA's definition of disability is significantly more limiting than the aforementioned definition of disability in the LTD Policy for the first 12 months of disability and substantially similar to the LTD Policy's definition of disability after the first 12 months of disability. Therefore, the SSA's approval is relevant evidence for this Court to consider with regard to the lawfulness of Prudential's decision to terminate Plaintiff's benefits after ignoring the SSA's determination.

19. In a letter dated April 3, 2009, Hartford informed Plaintiff that the recent approval of his Social Security Disability Insurance claim resulted in an overpayment of long term disability benefits. Hartford requested Plaintiff reimburse the total amount of the overpayment owed to Hartford within only fifteen (15) days of the date of the letter, which Plaintiff did.

20. Notwithstanding the approval of his SSA claim and additional evidence submitted by Plaintiff, Hartford informed Plaintiff in a letter dated July 2, 2009 that it was upholding the decision to terminate his benefits beyond May 9, 2009.

21. As part of its review of Plaintiff's claim for long term disability benefits, Hartford obtained a medical records only "paper review" of Plaintiff's claim from Arousiak Varpetian, M.D., who is a medical consultant for Reliable Review Services (hereinafter referred to as "RRS"). Upon information and belief, Plaintiff believes Dr. Varpetian is a long time consultant for the disability insurance industry and Hartford. Plaintiff further believes Dr. Varpetian has an incentive to protect his own consulting relationships with the disability insurance industry and Hartford by providing medical record only reviews which

selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

22. In a letter dated July 2, 2009, Hartford notified Plaintiff it had denied his appeal for long term disability benefits under the Hartford Policy. In the letter, Hartford also notified Plaintiff that he had exhausted his administrative rights and could file a civil action lawsuit in federal court pursuant to ERISA.

23. Notwithstanding the fact Plaintiff was not represented during the appeal and Hartford believed he had not provided sufficient evidence to prove his claim, Hartford failed to adequately investigate Plaintiff's case and failed to engage Plaintiff and/or his treating physician in a dialogue during the appeal of his claim with regard to what evidence was necessary so Plaintiff could perfect his appeal and claim. Hartford's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

24. Upon information and belief, Hartford denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to: failing to consider Plaintiff's Self-Reported Symptoms, failing to consider all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability, failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the combination of those diagnoses and impairments; failing to obtain an Independent Medical Examination when the policy allowed for one; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

25. Plaintiff further believes Hartford violated ERISA by failing to adequately consider the approval of his Social Security Disability Insurance claim. Plaintiff believes Hartford should have applied significant weight to the Social Security Administration's decision pursuant to *Metro. Life Ins. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) and *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623 (9th Cir. 2009) by comparing and contrasting why Hartford's decision was different than Social Security Administration's decision.

26. Plaintiff further believes Defendants violated ERISA, specifically 29 CFR § 2560.503-1(h)(3)(iii) and (h)(4), because Dr. Varpetian did not have the relevant medical expertise and was not the appropriate medical professional to evaluate all of his disabling diagnoses and the limitations which supported his claim. Defendants were obligated to consult with a health care professional with "appropriate medical training for the medical judgment" but it failed to do so.

27. In evaluating Plaintiff's claim on appeal, Hartford also had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in his best interests and other participants" which it failed to do. [1]

28. Plaintiff believes the reason Hartford provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

to the dual roles Hartford undertook as decision maker and payor of benefits which created an inherent conflict of interest.

29. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Hartford and any individual who reviewed his claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Hartford's decision to deny his claim.

30. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the Plan confers discretion, the unlawful violations of ERISA committed by the Plan and its administrators as referenced herein are so flagrant they justify *de novo* review.

31. As a direct result of Hartford's decision to deny Plaintiff's disability claim he has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

32. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

33. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the policy or Plan from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon, as well as any other employee

1 benefits he may be entitled to from the Plan and/or Company as a result of being found disabled;

    B.    For an Order finding that Plaintiff meets any definition of disability set forth in the relevant Hartford policy and directing Defendants to continue paying Plaintiff the aforementioned benefits until such time he meets the conditions for termination of benefits;

    C.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

    D.    For such other and further relief as the Court deems just and proper.

DATED this 23rd day of November, 2011.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff